IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GINA McWALTERS and          : CIVIL ACTION
IRENE GALLAGHER,            :
        Plaintiffs          :
                           : NO. 10-4289
        vs.                 :
                           :
STATE FARM MUTUAL AUTOMOBILE :
INSURANCE COMPANY,          :
        Defendant           :

**MEMORANDUM AND ORDER**

**JOYNER, C.J.**                                    **July 20, 2011**

This declaratory judgment, proposed class action has been
brought before the Court on Motion of the Defendant to Dismiss
Plaintiffs' Complaint.  As is explained in the pages which
follow, the motion shall be granted in part and several counts of
the complaint dismissed.

**Factual Background**

According to the complaint, Plaintiffs Gina McWalters and
Irene Gallagher are residents of Pennsylvania who hold automobile
insurance policies issued by Defendant, State Farm Mutual
Automobile Company pursuant to the laws of the Commonwealth of
Pennsylvania.  (Complaint, ¶s 1, 16, 17).  Both Plaintiffs were
subsequently injured in motor vehicle accidents for which they
received treatment from out-of-state medical providers who were
not subject to Pennsylvania law.  Plaintiffs allege that

"Defendant refused to provide proper payments for [their] medical costs by unlawfully applying improper fee schedules in order to reduce the amount that Defendant had to pay in benefits." (Complaint, ¶s 2, 3).  Plaintiffs submit that Defendants so acted "purposefully, deliberately, intentionally, willfully, wantonly, recklessly and/or negligently," and they thus seek "class wide determinations of liability and punitive damages to be shared by the Class on behalf of all others similarly situated," as well as "individual damages" under the theories of breach of contract and implied contract, negligence, breach of fiduciary duty, negligent and intentional misrepresentation, and in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201, *et. seq.* ("UTPCPL"), and Bad Faith Statute, 42 Pa. C. S. §8371.   (See, e.g., Complaint, ¶s 4, 5).

By way of the pending motion, Defendant seeks to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## Standards Governing Rule 12(b)(6) Motions

In considering motions to dismiss, the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002); Allah v. Seiverling, 229 F.3d 220, 224 (3d cir. 2000).  In so doing, the courts must consider whether the complaint has alleged enough facts to state a claim to relief

2

that is plausible on its face.  Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). "It is therefore no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct."  Umland v. Planco Financial Services, Inc., 542 F.3d 59, 64 (3d Cir. 2008), quoting Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

## Discussion

*A. Standing to Sue*

Defendants first submit that the complaint should be dismissed in its entirety because plaintiffs fail to allege any injury in fact and therefore lack standing to sue under Article III of the Constitution.

It is true that to have standing, a plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent;" that there must be a causal connection between the injury and the complained-of conduct; and that it must be "'likely ... that the injury will be redressed by a favorable decision.'" Lujan v. Defenders of

<u>Wildlife</u>, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 2136, 119 L. Ed.2d 351 (1992)(*internal citations omitted*).  "At the pleading stage, however, general factual allegations of injury resulting from the defendant's conduct may suffice, for, on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim." <u>Id</u>. 504 U.S. at 561, 112 S. Ct. At 2137; <u>Common Cause v. Pennsylvania</u>, 558 F.3d 249, 257 (3d Cir. 2009)(quoting <u>Lujan</u>).

In this case, while we concur with Defendant that the complaint does not contain many factual averments concerning the particulars of their damages, Plaintiffs do nevertheless allege that:

> "[a]s a direct and proximate cause of Defendant's breach, Plaintiffs and members of the class have suffered injuries in the form of economic loss, specifically the obligation to pay medical bills which should have been paid by Defendant in accordance with Plaintiffs' insurance policies..."

(Complaint, ¶s are 34, 39, 44, 53, 62-63, 74, 83, 89).  These allegations are, we find, sufficient to withstand a 12(b)(6) motion and to confer standing on the plaintiffs.  The motion to dismiss on the grounds of insufficient standing is therefore denied.

*B.  Gist of the Action and Economic Loss Doctrines*

Defendants next assert that the economic loss rule and the gist of the action doctrine bar the tort claims contained in Counts 3 (negligence), 5 (intentional misrepresentation) and 6

4

(negligent misrepresentation).  Because Plaintiffs concede that Counts II (Breach of Implied Covenant), III (Negligence) and Four (Breach of Fiduciary Duty) should be dismissed based upon the arguments advanced by Defendant,[1] those counts shall be dismissed with prejudice from the Complaint.   We thus need only consider the impact of the gist of the action and economic loss doctrines on Counts Five and Six.

Although yet to be formally adopted by the Pennsylvania Supreme Court, the gist of the action and economic loss doctrines have repeatedly been applied by the Pennsylvania Superior and Commonwealth courts, the Third Circuit and the U.S. District Courts in Pennsylvania, all of which have predicted its eventual adoption.  See, e.g., Werwinski v. Ford Motor Co., 286 F.3d 661 (2002); Factory Market v. Schuller International, 987 F. Supp. 387 (E.D. Pa. 1997); Grode v. Mutual Fire Insurance Co., 156 Pa. Cmwlth. 366, 623 A.2d 933 (1993); REM Coal Co. v. Clark Equipment Co., 386 Pa. Super. 401, 563 A.2d 128 (1989).  "The gist of the action doctrine bars plaintiffs from bringing a tort claim that merely replicates a claim for breach of an underlying contract." Melhorn Sales, Service & Trucking Co. v. Rieskamp Equipment Co. 2010 U.S. Dist. LEXIS 25398 at *11 (E.D. Pa. March 18, 2010) (quoting Werwinski, 286 F.3d at 680, n.8 and Phico Insurance Co.

---

[1]   See Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss, p. 4, fn.2.

V. Presbyterian Medical Services Corp., 444 Pa. Super. 221, 663
A.2d 753, 757 (1995)).

It has been said that the gist of the action doctrine "is
designed to maintain the conceptual distinction between breach of
contract and tort claims by precluding plaintiffs from recasting
ordinary breach of contract claims into tort claims." eToll, Inc.
v. Elias/Savion Advertising, Inc., 2002 Pa. Super. 347, 811 A.2d
10, 14 (2002).  The simple existence of a contractual
relationship between two parties does not preclude one party from
bringing a tort claim against the other, but it does foreclose a
party's pursuit of a tort action for the mere breach of
contractual duties, without any separate or independent event
giving rise to the tort.  The Knit With v. Knitting Fever, Inc.,
2009 U.S. Dist. LEXIS 98217 at *11 (E.D. Pa. Oct. 20, 2009),
citing, *inter alia*, Bohler-Uddeholm Am., Inc. v. Ellwood Group,
Inc., 247 F.3d 79, 104 (3d Cir. 2001).  To be construed as an
action in tort, the wrong ascribed to the defendant must be the
gist of the action with the contract being collateral.  Bash v.
Bell Telephone Co., 411 Pa. Super. 347, 601 A.2d 825, 829 (1992).
The doctrine has therefore been held to bar tort claims: "(1)
arising solely from a contract between the parties, (2) where the
duties allegedly breached were created and grounded in the
contract itself, (3) where the liability stems from a contract,
or (4) where the tort claim essentially duplicates a breach of

6

contract claim or the success of which is wholly dependent on the terms of a contract." Etoll, 811 A.2d at 19 (quoting Polymer Dynamics, Inc. v. Bayer Corp., 2000 U.S. Dist. LEXIS 11493 at * 19 (E.D. Pa. Aug. 14, 2000).

Closely related to the gist of the action doctrine, "the economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" Werwinski, 286 F.3d at 671 (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995); Knit With, 2009 U.S. Dist. LEXIS at *13). Under this principle, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Greenwood Land Company v. Omnicare, Inc., 2011 U.S. Dist. LEXIS 767 at *6 (W.D. Pa. Jan. 5, 2011)(quoting Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania, 604 Pa. 50, 985 A.2d 840, 841 n.3 (2009)). Thus for example, "if a claim is in essence one arising from 'failed economic expectations,' *i.e.* expectations that the product would perform in the manner warranted, then tort recovery is inappropriate." Knit With, 2009 U.S. Dist. LEXIS at *14 (quoting Fidelity & Deposit Co. of Maryland v. IBM Corp., 2005 U.S. Dist. LEXIS 25420 at *2 (M.D. Pa. Oct. 19, 2005)).

In examining the complaint in this case with the foregoing principles in mind, we can reach no other conclusion but that

Counts Five and Six are nothing more than a reiteration of Count
1, which asserts a breach of contract claim.  Indeed, the
pertinent facts pled in all of the counts are identical and may
be summarized as follows: (1) the plaintiffs were insured under
automobile insurance policies issued by State Farm pursuant to
the Pennsylvania Motor Vehicle Financial Responsibility Law with
medical payments coverage, (2) they were treated for injuries
sustained in automobile accidents by out-of-state providers, (3)
but Defendant refused to pay their medical bills in their
entirety on the grounds that the plaintiff's treating providers
were only entitled to payment in accordance with a fee schedule
applicable to Pennsylvania medical providers.   (4) As a result
of the defendant's refusal to pay the plaintiffs' medical bills
in full, the plaintiffs have suffered economic losses in that
they now owe their providers the difference between the amounts
charged and the amounts paid.   Indeed in substance, Counts Five
and Six also assert that Defendant "negligently and recklessly"
and "intentionally" "misrepresented to Plaintiffs and Class
members" ... "by way of their 'Explanation of Benefits,' that the
fee schedules applied to their respective medical bills were
applicable and that their respective medical bills were lawfully
paid by Defendant."  (Complaint, ¶s 58, 67, 68).  These
misrepresentations were ostensibly made "... for the purpose of
manipulating Plaintiffs and Class members to pay for benefits

which should have been covered by their respective motor vehicle insurance policies." (Complaint, ¶s 59, 679.

As the foregoing thereby demonstrates, there are no averments of physical injury, property damage or anything else which would suggest that Counts Five and Six emanate from some cause other than from Plaintiffs' purely failed economic expectations, *(i.e.* something aside from Plaintiffs' mistaken belief that their insurance policies would perform in the manner which they expected). It thus appearing that these claims arise solely out of the Defendant's failure and refusal to pay the benefits to which Plaintiffs believe they are entitled, we find they too emanate from the purported breach (*i.e.* failed performance) of the insurance contract itself.

Moreover, while Pennsylvania law suggests that fraud in the *inducement* of a contract may not necessarily be covered by the gist of the action and/or economic loss doctrines, claims for fraud within the *performance* of the contract are generally held to be merely collateral to a contract claim for breach of those duties.   See, e.g., eToll, 811 A.2d at 17, 19.  For all of these reasons, we find Counts Five and Six to be barred by the gist of the action and economic loss doctrines and shall grant Defendant's motion to dismiss these counts.

*C.  Bad Faith Claim – 42 Pa. C. S. §8371.*

Defendant next challenges Count Eight of Plaintiffs'

9

Complaint which asserts a claim for violating Pennsylvania's Insurance Bad Faith Act, 42 Pa. C. S. §8371.  Defendant argues that Plaintiffs are precluded from pursuing a claim under the Bad Faith statute because the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C. S. §1797 ("MVFRL") provides the exclusive remedy for claims such as the one presented here.  We must agree.

Significantly, the Pennsylvania legislature enacted Section 8371 at the same time that it amended Section 1797 of the MVFRL.[2] Section 8371 is captioned "Actions on insurance policies," and by its terms applies to insurance policies generally:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%,
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

Section 1797, entitled "Customary charges for treatment" on the other hand, specifically applies only to motor vehicle insurance policies under the MVFRL.  The relevant provisions at issue here read as follows:

**(b) Peer review plan for challenges to reasonableness and necessity of treatment.-**

---

[2]  See generally, Act 1990, Feb. 7, P.L. 11, No.6, §§3, 18 ("Act 6").

**(4) Appeal to court. -** A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO.  Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

    ...

**(6) Court determination in favor of provider or insured.-** If, pursuant to paragraph (4), a court determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees.

 The Pennsylvania Statutory Construction Act, 1 Pa. C. S. §1933

dictates that:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both.  If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

Because the Pennsylvania Supreme Court has yet to weigh in on the

matter, as is unfortunately so often the case, "consideration of

the issue has produced an array of conflicting opinions in

Pennsylvania's state and federal courts." Perkins v. State Farm

Insurance Co., 589 F. Supp. 2d 559, 563 (M.D. Pa. 2008)(citing,

_e.g._, Stephano v. Tri-Arc Fin. Servs., Inc., 2008 WL 625011 at *5

(M.D. Pa. Marc. 4, 2008); Olsofsky v. Progressive Insurance Co.,

52 Pa. D & C. 4th 449, 465-72 (Pa. Ct. Com. Pl. Lackawanna Cty.

11

2001)).  Insofar as the two provisions were enacted at the same time and the procedures and remedies under §1797 are set forth with specificity and in partial reliance on the Statutory Construction Act, the Third Circuit has determined that the statutes cannot be reconciled and thus the specific provisions of §1797 must be deemed an exception to the general remedy for bad faith contained in §8371.  Gemini Physical Therapy & Rehabilitation, Inc. v. State Farm Mutual Automobile Insurance Co., 40 F.3d 63, 67 (3d Cir. 1994) (citing Barnum v. State Farm Mutual Automobile Ins. Co., 430 Pa. Super. 488, 635 A.2d 155 (1993), rev'd in part and remanded on other grounds, 539 Pa. 673, 652 A.2d 1319 (1994)); Harris v. Lumberman's Mutual Casualty Co., 409 F. Supp. 2d 618, 620 (E.D. Pa. 2006).[3]

This does not end the matter, however, as the relevant provisions of Section 1797 are relatively narrow in scope.  See, e.g. Schwartz v. State Farm Insurance Co., Civ. A. No. 96-160,

_____

[3]   In so holding, the Gemini court found convincing and persuasive the Barnum court's application of the Pennsylvania Statutory Construction Act to hold that the provisions of §1797 and not §8371 are to be applied to claims for first party benefits under the MVFRL and predicted that the Pennsylvania Supreme Court would so rule.  As has been repeatedly recognized, however, the Pennsylvania Supreme Court reversed and remanded Barnum, albeit for reconsideration in light of its holding in Terminato v. Pennsylvania National Insurance Co., 538 Pa. 60, 645 A.2d 1287 (1994)(holding that statutory provision for reconsideration of adverse peer reviews of insurance claims based on medical treatment for injuries was not a mandatory administrative remedy that required exhaustion before claimants could seek judicial review).  While a number of courts have opined that the holding in Gemini is therefore in question, (See, Cieplinski v. State Farm Mutual Automobile Insurance Co., Civ. A. No. 3:10-CV-1093, 2010 U.S. Dist. LEXIS 75257 at * (M.D. Pa. July 26, 2010)), we do not agree as the reversal and remand in Barnum concerned an entirely different issue from the question of preemption.  See also, Schwartz, 1996 U.S. Dist. LEXIS at *12, fn.3.  In any event, Gemini remains the law in the Third Circuit.

1996 U.S. Dist. LEXIS 4994 at *12 (E.D. Pa. Apr. 18, 1996)(quoting Barnum, 635 A.2d at 496: "The provisions of 75 Pa. C. S. §1979 are narrowly limited to those situations in which a disputed claim is to be submitted to the PRO procedure.") "Thus, the holding of the Gemini court is limited to those situations where the insured is asserting a denial of first party benefits that was made following the process outlined in §1797." Hampton v. Geico General Ins. Co., 759 F. Supp. 2d 632, 648 (W.D. Pa. 2010)(citing Schwartz, 1996 U.S. Dist. LEXIS at *4)); Dougherty v. State Farm Mutual Automobile Insurance Co., Civ. A. No. 00-4734, 2002 U.S. Dist. LEXIS 4691 at *4-5 (E.D. Pa. Feb. 7, 2002). Stated otherwise, "Section 1797 preempts Section 8371 where both are applicable;" but where "an insurer's malfeasance goes beyond the scope of Section 1797," "courts have reconciled the two statutes and found bad faith claims[4] to supplement claims under

---

[4] Although "'bad faith' is not defined in the statute, ... courts interpreting Pennsylvania law have held that a §8371 claim contains two elements: (1) the insurer lacked a reasonable basis for denying benefits under the applicable policy, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for refusing the claim....The level of culpability required to prove bad faith is something more than mere negligent conduct which is harmful to the insured." Hampton v. Geico, 759 F. Supp. 2d at 644 (internal citations omitted). "Bad faith" has also been defined as being "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." Id, (quoting, inter alia, O'Donnell ex rel. Mitro v. Allstate Insurance Co., 1999 Pa. Super. 161, 734 A.2d 901, 905 (1999); Romano v. Nationwide Mut. Fire Ins. Co., 435 Pa. Super. 545, 646 A.2d 1228, 1238 (1994); Roppa v. Geico Indemnity Co., Civ. A. No. 10-1428, 2010 U.S. Dist. LEXIS 140033 at *7-8 (W.D. Pa. Dec. 10, 2010); Miller v. Allstate, 2009 U.S. Dist. LEXIS at *19 (internal citations omitted).

Section 1797." <u>Hickey v. Allstate Property and Casualty Insurance Co.</u>, 722 F. Supp. 2d 609, 613 (M.D. Pa. 2010)(quoting <u>Stephano v. Tri-Arc Fin. Servs., Inc.</u>, 2008 U.S. Dist. LEXIS 16673, at *5 (M.D. Pa. Mar. 4, 2008) and <u>Scwartz</u>, <u>supra</u>.)). <u>See Also</u>, <u>Miller v. Allstate Fire & Casualty Insurance Co.</u>, Civ. A. No. 07-260, 2009 U.S. Dist. LEXIS 18702 at *21-25 (W.D. Pa. Mar. 5, 2009)(citing litany of U.S. District Court and Pennsylvania Court of Common Pleas decisions holding likewise).  We therefore turn now to consider whether the bad faith remedy sought by plaintiffs in their complaint is preempted by §1797.

The allegations pertinent to the bad faith claim are contained in the following paragraphs of Count Eight and aver in relevant part:

> 85.  Defendant by its agents, servants and/or employees acting within the scope of their employment and/or authority, provided Plaintiffs and Class members with motor vehicle insurance policies and accepted premiums for the coverage provided to Plaintiffs.

> 86.  Defendant knew and/or should have known that Plaintiffs and Class members were likely to place confidence and trust in Defendant and/or its agents, servants and/or employees to process claims in good faith in their best interests.

> 87. Upon information and belief, Defendant, by its agents, servants and/or employees acting within the scope of their employment and/or authority, acted in bad faith by denying proper coverage to Plaintiffs and Class members by denying proper payment for medical benefits as required by the issued insurance policies and Pennsylvania law.

> 88.  Defendant, by its agents, servants and/or employees acting within the scope of their employment and/or authority, acted with willful, intentional, gross and/or reckless disregard for the injury and risk of economic loss

14

inflicted upon Plaintiffs and Class members.

89.  As a direct and proximate result of Defendant's acts and omissions, Plaintiffs and members of the Class have suffered injury in the form of economic losses.

From these very general allegations, we surmise that the gravamen of Plaintiffs' bad faith claim is the denial of first party medical benefits and nothing more.  Indeed, there are no allegations that Defendant did not properly invoke or follow the PRO process, denied or refused coverage, improperly invoked a coverage exclusion or otherwise misinterpreted or misapplied the insurance contract.  See, Richter v. Geico Indemnity Co., Civ. A. No. 10-CV-7133, 2011 U.S. Dist. LEXIS 67021 at *6-8 (E.D. Pa. June 23, 2011)(reciting litany of cases finding such claims outside the scope of §1797); Hickey and Perkins, both supra.  It therefore appearing that the scope of the Plaintiffs' bad faith claim in this case falls squarely within the purview of Section 1797, we conclude that Plaintiffs are precluded from pursuing a claim under Section 8371 and are constrained to dismiss Count Eight of the Complaint.

## Conclusion

For all of the reasons set forth above, the motion to dismiss is granted in part and denied in part and Counts Two, Three, Four, Five, Six and Eight are dismissed from the Plaintiffs' Complaint.  An appropriate order follows.

15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
GINA McWALTERS and          : CIVIL ACTION
IRENE GALLAGHER,            :
      Plaintiffs            :
                            : NO. 10-4289
      vs.                   :
                            :
STATE FARM MUTUAL AUTOMOBILE :
INSURANCE COMPANY,          :
       Defendant            :
```

## <u>ORDER</u>

AND NOW, this  20th   day of July, 2011, upon consideration of Defendant's Motion to Dismiss Plaintiffs' Complaint (Doc. No. 9) and Plaintiffs' Response thereto, it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART and Counts Two, Three, Four, Five, Six and Eight of the Complaint are DISMISSED with prejudice.

BY THE COURT:


 /s/ J. Curtis Joyner
J. CURTIS JOYNER,      C.J.